```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

MICHELLE K. RAWLS,                :
                                  :
    Plaintiff,                    :
                                  :
v.                                :    CIVIL ACTION 04-0276-M
                                  :
JO ANNE B. BARNHART,              :
                                  :
    Defendant.                    :

                MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22).  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision

under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born November 14, 1969.  At the time of the most recent administrative hearing, Rawls was thirty-two years old, had a year and one-half of college education (Tr. 98-99), and had previous work experience as a sales clerk, bank teller, and a collector (*see* Tr. 113).  In claiming benefits, Plaintiff alleges disability due to migraine headaches and cervical disc disease (Doc. 13 Fact Sheet).

Rawls filed a protective application for disability benefits and SSI on February 8, 2001 (Tr. 145-47, 344-46). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Plaintiff was capable of performing her past relevant work as an office clerk, bank teller, and cashier (Tr. 15-32).  Rawls requested review of the hearing decision (Tr. 13-14) by the Appeals Council, but it was denied (Tr. 5-7).

Rawls claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Plaintiff alleges that:  (1) The ALJ disregarded the opinions and conclusions of her treating physician; (2) the ALJ posed an improper hypothetical question to the vocational expert (hereinafter *VE*); and (3) she is unable to perform her past relevant work

(Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 18).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2004).

The Court notes at the outset that the entire record has been carefully reviewed.  Even so, only portions of the medical evidence will be summarized herein as Rawls candidly admits that there are not many objective findings of her migraine headaches; she argues, nevertheless, that this is not fatal to her claim if the treating physician's interpretation of the subjective signs and symptoms is properly considered (Doc. 13, p. 16).

The medical evidence demonstrates that Dr. Ellis S. Allen, a family practice doctor, has treated Plaintiff for over seven years for various things, though primarily for migraine headaches and neck pain (*see* Tr. 241-320, 322, 343,

---

[1] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

359-67, 379-80).  A CT brain scan, performed on February 5, 1998, was normal (Tr. 290).  An MRI of the cervical spine "demonstrate[d] minimal discogenic changes of the endplates.  Some disc desiccation [was] present of the upper segments, primarily involving C3-4, C4-5 and C5-6 levels.  There [was] minimal posterior marginal osteophyte formation without disc herniation;" the impression was "[m]inimal spondylosis of the mid and upper cervical segments" (Tr. 242).  On January 13, 2002, the doctor completed a physical capacities evaluation in which he indicated that Rawls was capable of sitting, standing, and walking for two hours each at a time and for three hours each during an eight-hour day; Allen further indicated that Plaintiff could occasionally lift and carry up to ten pounds, but never any more than that (Tr. 315).  Though capable of simple grasping and fine manipulation, Rawls was incapable of pushing and pulling of arm controls; she would have no trouble with leg controls (*id.*).  Dr. Allen further indicated that although Plaintiff could occasionally bend, she should never squat, crawl, climb, or reach; she has further work restrictions because of her narcotic medications of

Lortab,[2] Flexeril,[3] and Tylenol #3[4] (*id.* and Tr. 169). Nevertheless, the doctor indicated that he did "not feel that she is a narcotic addict or is engaging in 'drug-seeking behavior'" (Tr. 322).

In a letter to Plaintiff's attorney, dated June 25, 2002, Dr. Allen stated the following:

> As you know, your client, Michelle Rawls, is my patient. I have been her primary care physician since 1995. During that period of time, I have had the occasion to see her and examine her on more than forty occasions.
> It is my opinion, after this longitudinal care of seven years, that Michelle suffers from severe headaches, which occur with such intensity and severity to render her disabled.
> Her pain results in nausea, vomiting and photophobia, which require narcotic analgesics that impair her ability to concentrate, drive or operate in a work environment.
> I can also assure you that her pain is real and an ongoing phenomenon.

(Tr. 343). The ALJ rejected Dr. Allen's conclusions "because it conflicts with the record as a whole" (Tr. 27). The ALJ stated that Allen was board-certified as only a family

---

[2] *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[3] Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[4] *Tylenol* with codiene is used "for the relief of mild to moderately severe pain." *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

practitioner and that Rawls had failed to follow Allen's encouragement to see a specialist for her headaches (*id.*). The ALJ further noted that there were no objective findings to support the severity of Plaintiff's allegations and Rawls's admitting that the medications provided relief (*id.; see also* Tr. 28).[5]  In rejecting Dr. Allen's conclusions, the ALJ specifically credited the reports of consultative examiners Bennett, Fletcher, and Tarabein (Tr. 28).

On March 5, 2002, Plaintiff was seen by Dr. R. M. Tarabein, a neurologist, who determined that her "symptoms and signs seems [sic] to be merely subjective.  They are not supported by any abnormal medical or neurological findings [as she is] neurologically and physically intact" (Tr. 325; *see generally* Tr. 323-28).  Tarabein recommended a "more thorough neurological evaluation" (Tr. 325) but found her able to "do a host of physical and mental jobs without any restrictions" (Tr. 325).  The Neurologist indicated that he had reviewed and considered the medical evidence supplied by the Social Security Administration (hereinafter *SSA*) as part of his evaluation (Tr. 325).

---

[5]Though the ALJ has given a general cite for his assertion that Rawls stated that the medications relieved her pain, the Court has been unsuccessful in verifying the assertion (Tr. 27; *see* Tr. 249, 254, 263).  The Court notes, however, Plaintiff's testimony, at the first hearing, that the medication "keeps it at a dull roar.  It keeps the headaches at a dull roar and my neck to a dull throb.  It doesn't get rid of it totally, no" (Tr. 51).  Rawls stated, at the second hearing, that she takes Goody powders and that the narcotic medications did not interfere with her ability to drive and study (Tr. 90, 106).

On March 19, 2002, Psychologist Thomas Bennett administered the Minnesota Multiphasic Personality Inventory which "yielded a pattern associated with individuals who emphasize somatic symptoms" (Tr. 331; *see generally* Tr. 329-34*).*  After testing and talking with Rawls, Bennett found Plaintiff "highly likely to exaggerate and maintain physical symptoms for psychological reasons" (Tr. 331).  The Psychologist noted that treatment of her headaches with narcotics and Goody powders was unconventional and, most likely, of little utility (Tr. 331-32).  He further indicated that Rawls had no work limitations whatsoever (Tr. 333-34).  The Psychologist indicated that he had reviewed and considered the medical evidence supplied by the SSA as part of his evaluation (Tr. 332).

Dr. Raymond R. Fletcher, an orthopoedic surgeon, examined Plaintiff on May 23, 2002, and noted that he had reviewed the medical evidence provided by SSA (Tr. 235-42).  His impression was that Rawls suffered chronic mechanical cervical pain with tension headaches and chronic mechanical lumbar pain (Tr. 336).  Fletcher expressed the opinion that Plaintiff's "subjective complaints outweigh the objective findings.  This claimant's described work impairment exceeds the work impairment found during this evaluation.  There is evidence of secondary gain" (*id.*).  The surgeon further noted that there were inconsistencies in the history she gave and the examination which suggested symptom magnification (Tr. 337).

Fletcher stated that Rawls

> will have mild difficulty with activities requiring bending, lifting, stooping, crawling, and climbing. She will have mild difficulty with prolonged standing or walking. She will have mild difficulty with prolonged sitting. She will have moderate difficulty with repeated use of arms and hands overhead. She will have mild difficulty with repetitive use of hands.

*Id*. It was the Orthopoed's opinion that Plaintiff could sit, stand, and walk each for two hours at a time and up to eight-hours during an eight-hour day; furthermore, Rawls could lift and carry ten pounds constantly, twenty-five pounds frequently, and up to fifty pounds occasionally (Tr. 338).

After reviewing all of the evidence of record, the Court cannot say that the ALJ's conclusions are not supported by substantial evidence. Though the Court is sympathetic to Plaintiff's plight in failing to provide objective findings which prove the severity of her headaches, the Court does not think that this particular Plaintiff is the case for making such an argument. Specifically, though Dr. Allen stated that he had seen Rawls over forty times over a period of seven years, this averages out to one visit every two months; the record shows, though, that Plaintiff periodically went for much periods between visits. For example there was a nearly three-month period between the October 20, 2000 and January 15, 2001 visits (Tr. 248-49); more than five months between

the January 30, 2001 and July 13, 2001 visits (Tr. 246, 319); approximately three months between July 13 and October 12, 2001 (Tr. 318-19); and three months between the October 29, 2001 and January 31, 2002 visits (Tr. 316-17).  The Court also notes that Rawls testified that over the prior year and one-half she had driven three hours, round-trip, five days a week to attend college full-time while maintaining a B-C average and then worked approximately ten hours per week, on average, for over a year; she further stated, however, that she often missed school and work because of her headaches (Tr. 45, 75, 89-92, 99, 103-105).

Additionally, the Court has reviewed the websites for the U.S. National Institute of Health and the Mayo Clinic which suggest the use of nonsteroidal anti-inflammatory drugs, ergots, triptans, Isometheptene, and narcotics to treat migraines.  *See* /www.nlm.nih.gov/medlineplus/ency/article/000709.htm and /www.mayoclinic.com/invoke.cfm?objectid=7B64CC94-AFDF-42DA-BE3EBAA687DE024A&dsection=8.  While Plaintiff tried and rejected the usefulness of Imitrex (Tr. 254), her medication regimen has been primarily limited to the use of narcotics which, although can be used for migraines, are not the preferred prescription for relief or prevention.  The Court agrees with the ALJ's rejection of Plaintiff's disability claim, in part, for her failure to seek out a specialist for her headaches

(*see* Tr. 27).⁶  For all of these reasons, the Court finds that the ALJ's rejection of Dr. Allen's conclusions is supported by substantial evidence.

Plaintiff next claims that the ALJ posed an improper hypothetical question to the VE.  Rawls specifically objects that the second and third hypotheticals, on which the ALJ relied, failed to include the opinions and conclusions of Dr. Allen (Doc. 13, pp. 17-18; *cf.* Tr. 113-16).  The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

The Court has already found substantial support for the ALJ's rejection of Dr. Allen's opinion of disability.  The ALJ's rejection of the VE's response to the first hypothetical, which was based on Dr. Allen's conclusions, is consistent with his own findings and supported by the substantial evidence of record.

Plaintiff also claims that she is unable to perform her past relevant work.  More specifically, Rawls asserts that the ALJ's conclusion that she can return to her past work is

---

⁶Plaintiff's attorney stated, at oral argument, that Rawls had seen a neurologist, Dr. Kasmia (?), several years earlier, but that no objective findings had been generated and that no record of the examination existed (*cf.* Tr. 47-49, 72-73, 79).

faulty in that he failed to meet the requirements of Social Security Ruling 82-62 (Doc. 13, p. 18).

Social Security Ruling 82-62 states that the ALJ, in finding that a claimant can perform past relevant work, must make a specific "finding of fact as to the physical and mental demands of the past job/occupation." Social Security Ruling 82-62 (1982 WL 31386, *4 (S.S.A.)). In discussing the nature of this finding of fact, the Ruling states the following:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

Social Security Ruling 82-62 (1982 WL 31386, *3 (S.S.A.)).

The Court finds that the ALJ has minimally satisfied the requirements of Ruling 82-62 and 20 C.F.R. 404.1520(e).[7] The

---

[7] "If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past."

ALJ found that Rawls could perform her past work as an office clerk, a bank teller, and a cashier (Tr. 32, ¶¶ 10-11).  There is evidence of the physical demands of Plaintiff's past jobs scattered throughout the transcript (*see, e.g.*, Tr. 41-44, 73, 86, 91, 95, 113, 154, 173, 182).  Though the evidence is scant—and the ALJ himself did not specifically set out the physical and mental demands of those jobs as S.S.R. 82-62 would seem to require—the Court finds that this is, at most, harmless error as the evidence of record supports the decision that Plaintiff can perform those jobs.  Rawls's claim otherwise is without merit.

In summary, Rawls has raised three claims in bringing this action.  All are without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate order.

DONE this 20th day of May, 2005.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE